AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
INFORMATION ASSOCIATED WITH TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC. ACCOUNT(S) LINKED TO THE MOTOR VEHICLE 2022 SILVER TOYOTA CAMRY BEARING VEHICLE IDENTIFICATION NUMBER VIN 4T1F11BK4NU063920, WHICH IS STORED AT PREMISES CONTROLLED BY TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC., FURTHER DESCRIBED IN ATTACHMENT A. )

Case No.  5:25-SW-219 (ML)

USAO No. 2025R00521

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
INFORMATION ASSOCIATED WITH TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC. ACCOUNT(S) LINKED TO THE MOTOR VEHICLE 2022 SILVER TOYOTA CAMRY BEARING VEHICLE IDENTIFICATION NUMBER VIN 4T1F11BK4NU063920, WHICH IS STORED AT PREMISES CONTROLLED BY TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC., FURTHER DESCRIBED IN ATTACHMENT A.

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343; | Wire Fraud, |
| 18 U.S.C. § 1344; and | Bank Fraud, and |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

The application is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nicholas Marti* (signature)
*Applicant's signature*

Nicholas Marti, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Video Conference *(specify reliable electronic means)*.

Date: September 8, 2025

*[signature: Miroslav Lovric]*

Judge's signature

City and state: Binghamton, New York

Hon. Miroslav Lovric, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC. ACCOUNT(S) LINKED TO THE MOTOR VEHICLE 2022 SILVER TOYOTA CAMRY BEARING **VEHICLE IDENTIFICATION NUMBER** VIN 4T1F11BK4NU063920, IMEI: 355985239555231, WHICH IS STORED AT PREMISES CONTROLLED BY TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC. | Case No.   5:25-SW-219 (ML)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Nicholas Marti, your affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a warrant under 18 United States Code ("U.S.C.") §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.** an electronic communication service and/or remote computing service provider, to disclose to the government information associated with an account linked to 2022 Toyota Camry XLE bearing Vehicle Identification Number ("VIN") 4T1F11BK4NU063920 and IMEI: 355985239555231, (the "**Target Telematics Account**"), and which is stored at **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**, located at 1221 Avenue of the Americas, 37th Floor, New York, NY 10020.  The information to be searched is described in the following paragraphs and in Attachment A.

1

2.	I am a "federal law enforcement officer" within the meaning of Federal Rules of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and du1y authorized by the Attorney General to request a complaint. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately five (5) years and ten (10) months. I am currently assigned to the Albany Field Office, Syracuse Resident Agency.  As part of my duties, I investigate crimes including, but not limited to, Hobbs Act robberies, bank robberies, computer-related crime, fraud, public corruption, offenses involving weapons of mass destruction, domestic terrorism, crimes against children, and national security matters. I received training on the proper investigative techniques for these violations, including the application and execution of arrest and search warrants. I have conducted and assisted in criminal investigations and have been involved in the execution of multiple search warrants and arrest warrants. Prior to working as an FBI Special Agent, I was a United States Marine Corps combat engineer and a nuclear security officer from 2011 to 2019.

3.	The facts in this affidavit come from my personal observations, my training and experience, and my conversations with other law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.	Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 USC 1343 Wire Fraud, 18 USC 1344 Bank Fraud, and 18 USC 1028A Aggravated Identity Theft (the "Subject Offenses") have been committed, are being committed, and will be committed by **"unknown persons."** There is also probable cause to believe that **evidence and/or fruits** of the Subject Offenses further described in Attachment B will be found in a search of the information described in Attachment A and will

lead to the identification of individuals who are engaged in the commission of the Subject Offenses.

## JURISDICTION

5.  This Court has jurisdiction to issue the requested warrant because the Northern District of New York is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

## PROBABLE CAUSE

6.  On June 24, 2025, the Sales Manager of Fayetteville Dodge/RAM reported that the dealership was contacted online by an out of state customer claiming to be Victim 1 an individual from New Jersey who wanted to purchase a car.

7.  Victim 1's credit report was pulled on June 9, 2025, and a $100 payment was made via credit card.

8.  The purchase documentation was shipped to an address provided by an individual purporting to be Victim 1 in Columbus, Ohio. An individual purporting to be Victim 1 signed the purchase documentation, retail certificate of receipt, in-transit permit/title application on June 10, 2025.

9.  The sale was financed through NBT Bank with a 2022 Toyota Camry VIN 4T1F11BK4NU063920 being sold to a person purporting to be Victim 1 for $34,591.00. The perpetrator conducted the car purchase remotely and hired a shipping company to pick up the vehicle on June 14, 2025, and transport the car to Ohio.

10. Approximately, a day or so after the car was shipped, a person purporting to be Victim 1 re-contacted the dealership attempting to buy a second car for a friend, Victim 2 who resides in San Antonio, Texas.

11. The second vehicle was a 2024 Hyundai Santa Fe, VIN 5NMP3DGL1RH003838, with a purchase price of $40,971.00. The dealership received a phone call on June 20, 2025, from Victim 2. Victim 2 informed the dealership that a fraudulent inquiry was placed on their credit report and they did not attempt to acquire a vehicle.

12. On July 23, 2025, SA Kaitlyn Zerbe interviewed Victim 1 who confirmed that he did not purchase a car or authorize someone to purchase a car on his behalf.

13. On July 23, 2025, SA Kaitlyn Zerbe interviewed Victim 2. Victim 2 stated that they received a call from Bank of America regarding a car loan being taken out in their name. Victim 2 confirmed that they did not purchase a car or authorize someone to purchase a car on his behalf.

14. On August 8, 2025, your affiant and Federal Bureau of Investigation Special Agent Kaitlyn Zerbe interviewed the Romano Toyota Service Director, who informed law enforcement that the 2022 Toyota Camry XLE bearing VIN: 4T1F11BK4NU063920 came with an active trial subscription for SiriusXM Satellite Radio. A Toyota Service Lane Report revealed that the **TARGET TELEMATICS ACCOUNT** has an active subscription for SiriusXM Satellite Radio. Your affiant believes based on the **TARGET TELEMATICS ACCOUNT**, having an active subscription, that system may provide the last known GPS location or current location of the stolen vehicle as well as other locations that stolen vehicle traveled after being picked up from the car dealership in Fayetteville, New York and being delivered to a location in Ohio.

15. Furthermore, on August 8, 2025, your affiant confirmed the 2022 Toyota Camry XLE bearing VIN: 4T1F11BK4NU063920, has Toyota Remote Connect and Safety Connect. Toyota vehicles through this system transmit data back to Toyota or their telematics provider and include vehicle location, driving data, and vehicle diagnostics. Toyota Connect services include Safety Connect, Drive Connect, Remote Connect, and Service Connect. A Toyota vehicle that has an active telematics service provides the option of the owner utilizing the Entune Remote Connect App. This App allows the owner to remotely lock/unlock doors, start/stop the engine, monitor guest drivers, and get vehicle status notification. This includes obtaining vehicle customizable status alerts - doors, windows, moonroof, trunk, engine, etc. The **TARGET TELEMATICS ACCOUNT** is equipped with Remote Connect and Safety Connect. Your affiant believes that the **TARGET TELEMATICS ACCOUNT**, may provide the last known GPS location or current location of the stolen vehicle as well as other locations that the stolen vehicle traveled after being picked up from the car dealership in Fayetteville, New York and being delivered to a location in Ohio.

16. Based on the information provided by the car dealership, the victims and the banks associated with the car loans it is clear that the vehicle at issue was procured through fraud and that Victim 1 and Victim 2 are victims of aggravated identity theft. The information provided by the telematics system of the stolen vehicle will provide law enforcement with the last known GPS location or current location of the stolen vehicle as well as other locations that the stolen vehicle traveled after being picked up from the car dealership in Fayetteville, New York and being delivered to a location in Ohio. That information will assist law enforcement in determining who ultimately ended up with stolen vehicle and the path it travelled before reaching its current destination. Tracking the path of the stolen vehicle will help law enforcement

5

determine who participated in the fraud and ultimately profited from the subject offenses. Thus, **evidence and/or fruits** of the Subject Offenses further described in Attachment B will be found in a search of the information described in Attachment A and will assist in identifying the individuals who engaged in the commission of the Subject Offenses.

## TECHNICAL BACKGROUND REGARDING VEHICLE TELEMATICS SERVICES AND THE TARGET TELEMATICS ACCOUNT

17. Based on my training and experience, as well as my review of publicly available information, I have learned that: Many modern motor vehicles are equipped with sensors, cameras,[1] transmitters, and electronic control units (ECUs)[2] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[3] These systems also enable motor vehicles to interface with various types of

---

[1] As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer. https://www.federalregister.gov/documents/2014/04/07/2014-07469/federal-motor-vehicle-safety-standards-rear-visibility

[2] "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[3] The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are formally known as event data recorders (EDRs) or crash data recorders. Black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. Most black box recorders are programmed to record information in a continuous loop, writing over information until a vehicle is in a collision. When an accident occurs, the device automatically saves data from immediately before, during, and after the incident. Extracting data after an accident involves using data-retrieval tools that plug into a vehicle's onboard diagnostics port (the "OBD II port"). Unlike a vehicle's telematics system, Black box recorders are not subscription-based and typically do not transfer information over-the-air to manufacturers or to third-party providers.

mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like.

18.     Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Infotainment Control Unit and the Telematics Control Unit.

19.     A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System ("GPS") navigation, video players, music streaming, voice calling, texting, and traffic data. Additionally, many infotainment systems enable services, such as: hands-free phone calls and talk-to-text functionality with Bluetooth connectivity; music and video streaming; and/or turn-by-turn navigation. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

20.     A vehicle's telematics system typically collects and reports diagnostic data from various systems (other ECUs) within the vehicle, including, but not limited to, historical navigation points, speed, and event data. "Historical event data" may include location information, as well as information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

21.     The main difference between the infotainment and telematics systems is that the infotainment system is centered around entertainment for the occupants of the vehicle, and the telematics system enables a vehicle to connect with external networks and communications systems. Typical telematics services may include in-car Internet connectivity, remote access (*e.g.*, a manufacturer may offer subscribers remote access application options that allow the

subscriber to set climate preferences or lock/unlock doors remotely, etc.), emergency calling, turn-by-turn navigation, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

22. The data generated, collected, and transmitted back to telematics providers can provide valuable information for law enforcement, such as mobile device identifiers, wireless telephone numbers, user account details, call logs, messages, GPS coordinates, and other historical navigation information. For example, historical location data transmitted and retained by a telematics provider may contain critical evidence regarding the whereabouts of a target of an investigation and/or relevant to attribution of a particular vehicle user.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).

24. Your affiant further requests that the Court direct **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR NORTH AMERICA, INC.**. Your affiant also requests the Court direct **TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR NORTH AMERICA, INC.** to provide assistance necessary to accomplish the collection of information described in Attachment B timely, securely, and obtrusively. The government shall reasonably compensate for reasonable expenses incurred in furnishing such facilities or assistance.

8

25. Your affiant further requests that the Court authorize execution of the warrant at any time of day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

26. Based on the foregoing, I request that the Court issue the proposed warrant. The government will execute this warrant by serving it on **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**.  Because the warrant will be served on **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**, which will then compile the requested records at a time convenient to it, good cause exists to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

_____
Nicholas Marti, Special Agent


I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by video conference on September  8, 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Miroslav Lovric
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

Information about the historical and current location of the 2022 Toyota Camry XLE bearing Vehicle Identification Number ("VIN") 4T1F11BK4NU063920, IMEI: 355985239555231, (the "**TARGET TELEMATICS ACCOUNT**"), whose telematics service provider is **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**, Global Legal Demands Center, headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, FL 33408, including information that can be obtained remotely about the **TARGET TELEMATICS ACCOUNT** via **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**.

## ATTACHMENT B

## Particular Things to be Seized

All historical information about the location of the **TARGET TELEMATICS ACCOUNT** described in Attachment A from **June 14, 2025, to September 8, 2025** during all times of day and night. "Information about the "**TARGET TELEMATICS ACCOUNT**" includes all available GPS data, latitude-longitude data, and other precise location information regarding the vehicle described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "**Location Information**") is within the possession, custody, or control of **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.**, **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.** is required to disclose the **Location Information** to the government. In addition, **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.** must provide any assistance necessary to accomplish the collection of **Location Information** timely, securely, and unobtrusively. The government shall compensate **TOYOTA MOTOR SALES, U.S.A., INC AND TOYOTA MOTOR NORTH AMERICA, INC.** for reasonable expenses incurred in furnishing such assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the **Location Information**. *See* 18 U.S.C. § 3103a(b)(2).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

11

authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.